ROGER DERSARKISSIAN AND KIMIKO DERSARKISSIAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Dersarkissian v. Commissioner
Docket Nos. 10064-82, 15411-82, 10160-83.
United States Tax Court
T.C. Memo 1985-49; 1985 Tax Ct. Memo LEXIS 586; 49 T.C.M. (CCH) 635; T.C.M. (RIA) 85049; January 30, 1985
*586 Petitioners were limited partners in a partnership which was engaged in the acquisition and exploitation of motion pictures. They claimed their respective shares of losses from partnership operations. Held, none of the claimed losses are deductible because the partnership's activities were not engaged in with the predominant purpose and intention of making a profit. Larry Kars, for the petitioners. Paulette Segal, for the respondent. STERRETT
*636 MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes as follows: Docket
TYE
Date of
No.
Petitioner
Dec. 31,
Deficiency
Notice
10064-82
Roger Dersarkissian
1976
$14,677.00
3/1/82
and Kimiko Dersarkissian
1977
8,554.00
3/1/82
15411-82
Jason C. Parker and
Elizabeth Parker
1978
[2] 24,197.78
4/15/82
10160-83
Lawrence Keith
1975
[2] 39,644.00
3/1/82
The issues before the Court are (1) whether the activities conducted by Merjr Properties were engaged in for profit; and (2) whether various deductions and credits taken should be allowed. FINDINGS OF FACT *587 Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioners' residences at the time they filed their timely petitions in this case, and the places where they filed their income tax returns for their respective years, are as follows: *3 Appropriate
Petitioner
Residence
Office of IRS
Roger Derksarkissian and
Kimiko Dersarkissian
Flushing, N.Y.
Holtsville, N.Y.
Jason C. Parker and
Elizabeth Parker
Elmsford, N.Y.
Holtsville, N.Y.
Lawrence Keith
New York, N.Y.
Holtsville, N.Y.
Petitioners were limited partners in the partnership, Merjr Properties (hereinafter Merjr). Merjr was formed in August 1975) by Mark Greene, its general partner. The purpose of the limited partnership was to purchase two films, "Revolt of the City" and "City Accuses" (also known as and sometimes referred to as "I Accuse"). These films were to be distributed and exploited in the United States and Canada. As general partner, Mr. Greene's responsibility was to manage the limited partnership. Mr. Greene was a public accountant and did not have any significant prior experience in the motion picture business. To *588 be precise, his prior experience consisted of being a co-general partner in one partnership and a limited partner in another, both of which had invested in motion pictures. These partnerships, as well as Merjr, reported losses for each of the taxable periods ended 1975 through 1981. On September 30, 1975 Merjr purchased the two motion pictures from Cinerama. The record failed to show that the acquisition was the result of arms-length negotiations. In fact, the first time that Mr. Greene met with any representative of Cinerama with respect to acquiring the two films was at the closing. *4 The purchase agreement required Merjr to pay Cinerama $400,000 in each and to execute a nonrecourse note for $2,600,000, with interest at 6-percent per annum. The note was due and payable in 12 years and required that interest be paid first. Security for the nonrecourse note was the two films. Under the purchase agreement, Cinerama was to receive 60 percent of Merjr's proceeds from distribution of the two films until the nonrecourse note, along with its interest, was paid in full. None of the principal or interest on the nonrecourse note has ever been paid. Mr. Greene selected International Cinefilm *589 Corp. (hereinafter Cinefilm) to be the distributor of the partnership's films. Cinefilm was owned by Jaques Falerne. The record is vague with respect to whether any investigation was made into Mr. Falerne's reputation, if any, for distributing motion pictures. Pursuant to the distribution agreement, Cinefilm was required to release both films in 1975. Cinefilm was also required to spend at least $50,000 for prints and advertising with respect to the films. Merjr was not required, nor did it, invest any money towards distribution of the films. Cinefilm's share [3] of the gross box office receipts from the films was to be divided between Merjr and Cinefilm as follows: [4] *590 *5 first
$300,000
30% Merjr
70% Cinefilm
second
$300,000
35% Merjr
65% Cinefilm
third
$300,000
40% Merjr
60% Cinefilm
over
$900,000
50% Merjr
50% Cinefilm
Merjr initially had one limited partner, Dr. Idillio G. Noseda, who held a 98-percent interest. On October 14, 1975, he assigned 94.5 percent of his partnership interest to 28 other limited partners. It was through this assignment that petitioners acquired their respective interests in Merjr. Prior to and subsequent to this assignment, Mr. Greene never held a general meeting of the limited partners. Only five or six of the 28 limited partners ever viewed the films purchased by Merjr. At all relevant times Merjr was on the cash basis of accounting. In 1975, depreciation of the two films was calculated pursuant to the income forecast method of *6 depreciation. On Merjr's 1975 income tax return, depreciation was computed based upon a projected earnings totaling *591 $19,000 for the two films. Merjr was not operated in a businesslike manner. The distributor, Cinefilm, opened the two films during the worst possible time of the year. In the first year of distribution, Mr. Greene only received semi-annual accountings although he had a right under the distribution agreement to receive monthly accountings. During the second year of distribution, Mr. Greene did not receive the quarterly accountings that Cinefilm was required to furnish him. The nonbusinesslike operation of the partnership is further illustrated by the fact of Mr. Greene's indifference with respect to whether Merjr made an economic profit from the films' distribution. Mr. Falerne was the only individual at Cinefilm with whom Mr. Greene had contact. Mr. Greene never met Mr. Falerne and spoke with him at most twice a month in the first year of the films' distribution. Under the distribution agreement, Merjr was entitled to receive a list of the films' play dates. Cinefilm never gave Merjr, and Merjr never requested, a schedule of releases or a list of play dates for either film. Consequently, Merjr did not know the cities where the films were being shown or whether they *7 were being *592 shown. Even though Cinefilm failed to satisfy all the terms of the distribution agreement, Mr. Greene did not attempt to engage another distributor. Mr. Greene relied on Cinefilm's income statements to determine Merjr's share of gross box office receipts, its expenses and depreciation. He did not question the correctness of these income statements, although Merjr had a right to audit Cinefilm's books. This right was never exercised, even though Merjr did not receive any income from distribution during the taxable years 1975 through 1978. Mr. Greene was oblivious with respect to distribution of the two films. While Cinefilm was required to spend at least $50,000 towards advertisements and prints of the two films, Mr. Greene was unaware of the amount actually spent. [5] He did not know how many prints of each film were made. In fact, Merjr did not even have a print of "I Accuse" and only has a video cassette of "Revolt of the City." Merjr did not have any reviews of either motion picture, and Mr. Greene did not know if either film had ever been reviewed. Neither motion picture has ever been *593 registered with the Copyright Office of the United States and neither motion picture was ever rated or screened by the Classification and Rating *8 Administration of the Motion Picture Association of America. [6] To date, neither the television nor the school market for either film has been exploited. On their respective income tax returns, petitioners took deductions and credits pursuant to their partnership interest in Merjr in the following amounts: Tax year
Petitioner
ended
Deduction
Credit
Roger and Kimiko
12/31/76
$36,944
Dersarkissian
12/31/77
36,130
Jason C. and
Elizabeth Parker
12/31/78
4,441
Lawrence Keith
12/31/75
13,240
$10,507 In the respective notices of deficiency, respondent disallowed these claimed deductions and credits. Respondent maintained that the partnership was not an activity entered into for profit. Since the motion picture activity was not entered into for profit, no investment tax credit was allowed. In addition, respondent determined that petitioners' depreciation deductions were disallowed because the method *594 of depreciation did not bear a proper relationship to a decline in the film's usefulness and, in any event, the fair market value of the film had not been established. Alternatively, respondent determined that the portion of the depreciation deduction attributable to the amount of the nonrecourse note was disallowed because the *9 note lacked economic substance, could not be considered a partnership liability, and therefore, could not be added to the cost or depreciable basis of the film. [7]
OPINION At issue in this case are deductions and credits claimed by petitioners as a result of their respective interests as limited partners in Merjr. Respondent disallowed these deductions and credits on a variety of grounds. We choose to begin by addressing the issue of whether the partnership activities were engaged in for profit. A large portion of the partnership deductions for the years 1975 through 1978 consisted of deductions for depreciation *595 of the motion pictures. Section 167(a) [8] allows as a depreciation deduction a reasonable allowance for the exhaustion of (1) property used in a trade or business, or (2) property held for the production of income. The carrying on of a trade or business is also a prerequisite to deductibility under section 162. See sec. 162(a). Thus, absent a trade or business, the partnership *10 is not entitled to deductions pursuant to either section 162(a) or section 167(a). [9] *596 A similar analysis is applicable with respect to investment tax credit. [10]
A partnership does not constitute a trade or business unless the partnership engages in the activity with the predominant purpose and intention of making a profit. Flowers v. Commissioner,80 T.C. 914, 931 (1983); Siegel v. Commissioner,78 T.C. 659, 698 (1982); Brannen v. Commissioner,78 T.C. 471, 505 (1982), affd. 722 F.2d 695 (11th Cir. 1984). Although it is not necessary that the partnership's profit-making expectations be reasonable, its profit objective must be in good faith. Sec. 1.183-2(a), Income Tax Regs.; Flowers v. Commissioner,supra at 931; Allen v. Commissioner,72 T.C. 28, 33 (1979). This issue of whether a profit objective was present is determined at the partnership *597 level. Brannen v. Commissioner,supra at 505. *11 The determination of whether the requisite intention exists is one of fact to be resolved on the basis of all the facts and circumstances. Flowers v. Commissioner,supra at 931-932; Dunnv. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). [11] *598 Greater weight should be given to objective facts than to mere statements of intent. Sec. 1.183-2(a), Income Tax Regs.; Churchman v. Commissioner,68 T.C. 696, 701 (1977). Petitioners have the burden of proof on this issue. Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without opinion (D.C. Cir. 1983); Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent argues that Merjr was formed and operated solely for the purpose of generating tax deductions for its limited partners. He also maintains that the manner in which the partnership was operated and the history of losses associated with the films show that there was little chance of the partnership's ever producing an ecomomic profit. Petitioners *12 contend that, although motion pictures are high-risk investments, the general partner and the distributors made every effort to make the films a financial success. Thus, petitioners contend that the purchase and exploitation of the motion pictures was an activity engaged in for profit. For the reasons stated below, we agree with respondent that the partnership was not an activity engaged in for profit. The general partner, Mr. Greene, had no significant background in the motion *599 picture industry. He previously had invested in two motion picture partnerships, both of which had lost money. Even though he lacked the necessary expertise, he never sought the advice of experts in managing the partnership's operations. The partnership was not operated in a businesslike manner. [12] Mr. Greene had minimal contact with the distributor, Cinefilm. Cinefilm expended little effort to promote and distribute the films. In fact, the films were not even copyrighted or rated. In addition, the distributor failed to satisfy all the terms of the distribution agreement. The partnership was not given regular accountings of the films' performances. It also did not receive a schedule of releases or a list of play dates for either film. Consequently, Mr. Greene did not know where the films were being shown or whether they were being shown. Despite these *13 facts, and the fact that Merjr never received any income from distribution of the films, no attempt was ever made to change distributors.This was carrying laissez-faire too far. Finally, Merjr never intended to make an economic profit from the purchase and exploitation *600 of the two motion pictures. It purchased the two films for the inflated price of $3 million. Three months later these same two films had estimated future earnings of only $19,000. It was obvious from the outset that the films would not generate enough revenue to recover their cost, let alone make a profit. Petitioners' expert witness confirmed the partnership's lack of profit motive. He made an appraisal of the two films prior to their acquisition by Merjr. His appraisal estimated that the total gross at the box office would be $8,500,000. The partnership's share of these proceeds would have been $371,000. This amount would have been insufficient to recover Merjr's cash investment in the films. Accordingly, we find that Merjr was not an activity engaged in for profit and that it was not entitled to deductions and credits pursuant to sections 162(a), 167(a) and 48(a). [13] *601 Decisions will be enteredfor the respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Jason C. Parker and Elizabeth Parker, docket No. 15411-82; and Lawrence Keith, docket No. 10160-83.↩
2. The stated deficiency includes adjustiments with respect to other issues which have been severed for purposes of this case.↩
3. Cinefilm was entitled to receive 25 percent of the gross box office receipts from each film. ↩
4. According to petitioner's expert witness's appraisal, the two films would generate gross box office receipts of $8,500,000. This appraisal was made prior to Merjr's purchase of the two films. It should be noted, however, that petitioner's expert knew the terms of the purchase and distribution agreements prior to writing his appraisal. If this estimate were accurate, the Merjr return on its investment would have been insufficient to recover its cash investment. ↩
Gross box office
$8,500,000
Cinefilm's share of the
gross box office
2,125,000
Merjr's share
30% of first $300,000
90,000
35% of next $300,000
105,000
40% of next $300,000
120,000
50% thereafter
612,500
Total
927,500
60% of $927,500 paid to Cinerama
556,500
Merjr's share
$371,000
5. Petitioners' expert witness was of the opinion that the films were not properly advertised.↩
6. Receiving a rating from the Motion Picture Association of America is essential for distribution because many exhibitors will not show a film without such a rating.↩
7. Respondent also disallowed a variety of miscellaneous expenses such as payments to partners, legal expenses, accounting expenses, advertising, and distribution expenses on a variety of grounds. For reasons set out in the opinion, we need not address them.↩
8. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. ↩
9. Although expenses incurred for the production of income as described in sec. 212 cannot give rise to partnership deductions (sec. 703(a)(2)(E)), they can be taken into account separately by each partner pursuant to the authority of sec. 1,702-1(a)(8)(i), Income Tax Regs. In the instant case, the deductions were taken by the partnership as expenses incurred in a trade or business. Neither Merjr nor the individual petitioners claimed deductions under sec. 212(1) or sec. 212(2) on their returns, and no argument has been made at trial or on brief that the deductions claimed are anything other than trade or business expenses. 10. The credit is only available where the subject property is depreciable and has a useful life of 3 years or more. Sec. 48(a)(1). Thus, if the property cannot be depreciated because it was not used in a trade or business (or was not held for the production of income, see n. 9 supra), it cannot give rise to investment tax credit. Pike v. Commissioner,78 T.C. 822, 841-842↩ (1982).
11. Some of the relevant factors to be considered in determining whether an activity is engaged in for profit are (1) the manner in which the taxpayer carried on the activities; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs.↩
12. See also our findings of fact, which are more extensive.↩
13. Since Merjr had no income for the taxable years in issue, no deductions are allowed under secs. 183(a) and 183(b)(1) and (2). Based upon our finding that Merjr was not an activity engaged in for profit and that it was not entitled to any deductions or credits, we need not address respondent's alternative arguments with respect to disallowance of the claimed deductions.